Good morning, counsel. Our next case is 5090624, Lebanon Chiropractic v. Mid-Century. We have Mr. Hack for the appellant and Mr. Piper for the appellant. When you're ready, counsel. May it please the court, counsel, good morning. Appellants ask this court to reverse the class certification order issued below and to remand this case for proceedings on Lebanon's individual claim against the defendant, Mid-Century. In certifying a class here, the trial court abused its discretion. It committed a clear error of law. It rendered a decision which, if not reversed on appeal, will lead to substantial injustice. Your Honor, the predominant standard was not met and cannot be met in this case. The rule of Avery, DeBose, and the great weight of the authority that we cite in our papers demonstrate that common evidence will not predominate at any trial of this case which comports with due process. The critical liability questions, reasonableness, deception, causation, are individual. They're particular. They depend on evidence unique and specific to each member of the class. The trial of Lebanon's case will not demonstrate a right of recovery. It will not establish liability to any other member of the asserted class. Are you familiar with the case of Coyne, Bemis v. Travelers? I am, Your Honor. Is this similar to it, factually? Or not factually, but the issues, are they similar at all? Your Honor, I say the issues are different, and they're different in large part because the record is different. We have evidence in this case about, for example, Dr. Fisher. He's Lebanon's principal. We have evidence about what Dr. Fisher regularly accepts. Our contract is different in some ways than the Liberty contract. The stories, the facts about the insured, Ms. Severs is the mid-century insured. Are the legal issues similar? Similar is a dangerous word, Your Honor. I would say that the court will want to consider the opinion in the other case when looking at our case, but I submit that there are fundamental differences here, and those differences are predominantly evidential. Okay, go on then. The trial court sloughed off the individual liability questions to a hypothetical, non-jury, future proceeding about which nothing is known. In doing this, I submit the trial court sacrificed individual justice. It deprived the defendants of their due process rights, and in the end, the future hypothetical proceeding that the court has in mind will not lead to genuine efficiency or economy. Was there a contract with the doctor for steerage? Your Honor, the doctor had a contract with CCN. CCN is a PPO organization. You may read the contract between Lebanon and CCN from top to bottom, cover to cover. In that contract, there is nary a requirement of channeling or steering. It's not there. And I emphasize Illinois law, an argument that you'll hear or may hear, and we surely heard in the briefing, was that Illinois law implies mandates channeling in PPOs. That's been decided three times by courts in our state. The answer is there is no Illinois law that requires channeling or steering. If we're to have a different law, that's up to the legislature that we just elected. The record evidence in the case, the contract, Your Honor, on which MidCentury is sued is the insurance policy, and that is an insurance policy between MidCentury and its insurer, a woman by the name of Naomi Sievers. Ms. Sievers was injured in a car accident. She received treatment from Lebanon. What did the insurance policy provide? It provided for the payment of reasonable expenses, and those were further defined, expenses that are usual and customary. After Ms. Sievers' treatment, Lebanon submitted a bill. Zurich Services, who is MidCentury's managed care vendor, recommended that MidCentury pay at the PPO rate. That recommendation was reviewed by an individual. You may look at the Hetherington affidavit, the Budbee affidavit, both in the record. The individual made the ultimate decision on the amount to be paid. What do we know about Dr. Fisher and Lebanon's practices, their billing practices? Only 5% of the time does Dr. Fisher and Lebanon receive full bill charges. Said differently, 95% of the time, he does not. 95% of the time, he accepts less than his full bill charges as payment in full. Dr. Fisher never points to any prompts, oral or written, in his deposition about channeling. He's stating an expectation, interpretation, hope. The words vary. But the point was, it was individual. It was a state of mind. Dr. Fisher's clinic, Lebanon, received an explanation of review. Dr. Fisher was also the corporate representative, the only corporate representative at deposition. He never read it. He never saw it. He never saw it until his deposition. He took no action. There was no injury to Ms. Severs. Ms. Severs was the insurer, remember, the person to whom we have a policy promise. She never received a balance bill. She never paid a balance bill. She made no complaint. There's no allegation that her access to treatment was in any sense interfered with in any meaningful way, in fact, in any way at all. I'd urge the court to look at Dr. Fisher's deposition. It's at the record of 00963, where it's quite clear there's no injury to Ms. Severs here whatsoever. All of these facts, I submit, the ones that matter, are essentially unique and particular to Ms. Severs and to Lebanon. The determinative liability question in the case I submit is the reasonableness of Dr. Fisher's full bill charges and the reasonableness of MidCentury's payment. The trial of the question, whether his full bill charges were reasonable or unreasonable, will not answer the question of whether the full bill charges of any other class member were or were not reasonable. The circuit court assumes that there are legal arguments that can be decisive here, and that by looking at these legal arguments, you can exclude all evidence, all evidence of what Dr. Fisher normally charges, what he normally accepts, what other providers in the community charge, what other providers in the community accept. Your Honors, that is not the law of our state. Lebanon is the proponent of class certification as the plaintiff has the burden of proof. They have to show coverage. They have to show they can prove reasonableness across the board with common evidence. They have to show that all the predicates for class certification are satisfied. They've submitted no evidence whatsoever about charges in the community. They've submitted no evidence, no indication of how you would purport to compare charges of individual providers to charges in the community. They've explained never once how common evidence could show whether a provider's charge is or is not reasonable, is or is not usual and customary. There is nothing in the record to support a conclusion that these essential questions can be answered across the board. I submit also that no matter how Lebanon tries to prove its case, by legal argument, by across-the-board assertion, the defendants have rights. And in our adversary system, as the Supreme Court has told us, one of those rights is the right to defend, the right to contest the claims made against you. And I submit, Your Honors, here we have the right, the right to challenge a provider's assertion that his whole bill of charges are reasonable, a right to challenge that he always or she always charges this amount, a right to compare and contrast those charges against other charges in the community to determine if they are in fact reasonable, if they are in fact usual and customary. I'd like to refer the Court to four cases. Victory Memorial Hospital v. Wrights, 143 Ilad 3rd, 621. Major MAJID v. W, 226 Ilad 3rd, 642. That's the jump site, Your Honors. Sherman Hospital v. Wingard, 169 Ilad 3rd. The jump site's 164. And Dreyer Medical Clinic v. Corp., 227 Ilad 3rd, 224 and 227. These are all cases about the reasonableness of medical expenses, and they're all cases about whether medical expenses are usual and customary. And when you look at those cases, it is very clear that the evidence on which the Court is basing its decision is individual. It is clear that the defendant has been given the right to cross-examine. In fact, in one of those cases, the plaintiff failed to present evidence of reasonableness. Judgment for defendant was the decision of the appellate court. In addition to those four Illinois cases, four Illinois appellate court cases, I refer the Court to the Highsmith v. State Farm case, the advanced acupuncture case out of the Third Circuit, and the many other cases we set in our legal memory. I submit, Your Honor, there are three essential propositions that the Court can draw from those cases. The first is, when reasonableness of the medical expense is at issue, it is a liability question. It is not a damage question. The only court that appears confused is the trial court here. The second question is, the burden of proving reasonableness is and remains on the plaintiff. That's a consistent rule as well. Before we even get to the reasonableness, do you think that we need to, as Judge Wexton asked just a second ago, whether or not there's a requirement for steerage? Your Honor, I don't think that the Court needs to decide that. That's the plaintiff's theory. You don't think that's the threshold question here? If we determine that there's no requirement of steerage, why do we have to go into anything else? Barbara Sales would seem to indicate that we can do that. Does it not? Your Honor, I submit, though, that under the plaintiff's theory of recovery, I want to be clear. I've got to play the ball down, as they say. Under the plaintiff's theory of recovery, they say there's no, if you fail to meet the predicates, you're not able to rely on the PPO contract rate. That's their theory of the case. And I'm saying that if you accept that theory for a moment, liability still hinges not on channeling, but whether we breached our insurance policy. That's what we're being sued for. The defendant stands before you accused of breaching its insurance policy, which contains a promise to pay reasonable and necessary expenses. I submit if no channeling is required, I win. Not me, Your Honor, but the client wins. But that's not the plaintiff's theory of the case. And I'm trying to respond to their theory before you today, demonstrating the error in the trial court's approach. Because even if you assume channeling is required, which I submit it isn't, mid-century is not a party to the agreement between CCM and Lebanon. If Lebanon has some grievance about channeling and bases its grievance on a contract, it may have a disagreement with CCM, but it doesn't have a disagreement with us. We're not a party to that contract. Our contract is the insurance policy. I invite the court to the third point I was going to say briefly was that in all of these cases, the ultimate liability question of reasonableness is a question that can't be served. That's the majority rule, and I submit it's the right rule. It's the right rule for this case. What type of evidence, what type of individual evidence would likely be considered? I can't say that I know that to the court in every case. What type of liability questions would be relevant? I can't say that I know that in every case. But what I can say and what the cases teach us is that the question of reasonableness is individual and the evidence needed to prove and disprove it is individual. And for those reasons, the case cannot be served. And you contend that the plaintiff conceded that at oral argument at trial. Well, Your Honor, the plaintiff has made a number of assertions. What they've said is they believe they should be paid their full bill of charges. I would tell you that's their predominant theory. But you claim that in a footnote that… What they said is there would be individual damages received. That's to be clear. So those would be totally separate from the issue of liability. That's how the plaintiff… There would be many trials. I'm sorry, Your Honor. And there would be many trials on the issue of damages. That is how they proceed. And what I submit to this… That's not precluded, many trials after… It's not precluded, Your Honor, but I want to make a point. The need for many trials demonstrates that predominance is not satisfied. Those many trials would have to look at questions of sign, questions of injury, would have to look at questions of reasonableness. Those are poor liability questions. And what you can't do is define a way, isolate a few common questions, and push off every other liability question to a claims process and say, voila, what's left in the case demonstrates a predominance of common issues. You have to look at the case as a whole, and as I cited those four Illinois health court cases. Reasonableness is a liability question. It's not a damages question. Now, there are a number of justifications that the circuit court offers for ignoring individual evidence of reasonableness. We've addressed channeling in response to these questions. There's a question about a payer agreement. The court has looked at this. There's the Bemis case, Bemis v. Zurich Services. That decision is an arbitration case, and there's been no finding of liability below, even after the appeal. Regardless of whether there is or isn't a payer agreement, I submit, we all come back to the same question. The policy promise against mid-century is work stand before you, the appellant stand before you, accused of breaching their contract to pay reasonable expenses, and that's an individual inquiry. An argument is made that the insurance policy is ambiguous. I'll touch on this briefly. The four cases I cited, each of them, each of them, use the word reasonableness and usual and customary. Many other courts in Illinois look at questions of usual and customary. The courts deal with this question all the time. The legislature uses these terms in statutes. The Department of Insurance uses these terms in bulletins available on their website for use by consumers to understand what their medical expenses are or are not covered. There's no ambiguity. There's no uncertainty. And the notion that there is harm to insurance is utterly false on the record before you. There's no evidence of it whatsoever. I'd like to mention and turn next, if I might, to the consumer fraud claim. Under the Illinois Consumer Fraud Claim, I submit that the court's decisions in Avery, in DuBose, and Barbara Sayles all mandate reversal. There are a couple of lessons in those cases. One is the plaintiff must be deceived by a representation or omission, and the plaintiff must, the deception must be the proximate cause of injury. Deception, causation. Avery, in many respects, the plaintiff is just like the plaintiff in Avery. The plaintiff here claims never to have seen the deceptive communication. The plaintiff in Avery claims never to have been deceived by the alleged misrepresentation about non-OEM parts. The plaintiff never saw the allegedly deceptive communication until his deposition. Whether Lebanon read any communication from the appellants, how Lebanon understood that communication, and whether Lebanon acted or didn't act in response to that communication, don't address any of those liability questions for any other class members. You're just talking about the context of steerage now? You're talking about the context of reasonableness? Your Honor. As far as the plaintiff's complaints concerned. The plaintiff's complaint, as I understand it, is a claim that didn't get channeled. With a steerage? Steerage, however. Yes, sir. Okay. I submit my arguments about the IPCA claim are true in both directions. The deception, the deceptive communication is the explanation of the review. It was, so far as the record reflects, the only communication between these parties. Their corporate representative claims never to have seen it, has no idea. So whether or not the plaintiff can prove it, we're talking about the misrepresentation as steerage as opposed to reasonableness now. Is that your interpretation of the plaintiff's complaint? To be clear, Your Honor, that's all I understand. Yes, indeed. I submit that there's no case in Illinois that excuses the plaintiff from proving that it received the deceptive communication. There's no case of which I'm aware that excuses the plaintiff from proving that the deceptive communication was a proximate cause of injury. And for those reasons, I urge that the certification of the IF account also be dismissed. I'd like to cover two points that interrelate, injury and assignment. There's no evidence of injury to be ensured in this case. Why does that matter? It matters because Dr. Fisher stands before the court as an alleged assinee of the claim of the insured Ms. Naomi Severs. Ms. Severs was never injured, paid no bill, had no complaint, never received nor paid anything to Lebanon Chiropractic. If Ms. Severs has no injury, Lebanon may have no greater rights than Ms. Severs has. That is black leather, harmful clawing in law. It is an individual question to determine whether any particular insurer paid a balance bill. It's an individual question whether any provider before this court has a valid and enforceable assignment. How do we know that? I submit it's law of the case. The assignment document here, Your Honors, said, The assignment is effective for 12 months from the date of signature. To no surprise, Your Honor, appellants moved to dismiss the claim on the grounds the assignment was facially expired. The court denied our motion. It said no. There are different interpretations that are possible here. You need to look at evidence of the document. You need to look at evidence of surrounding circumstances. You need to look at evidence of intent. Now, Your Honors, I submit the only thing you needed to figure out whether the assignment expired or not was a calendar. But leave that aside. The trial court's finding that it couldn't resolve the question of this particular assignment without individual evidence, without individual hearings, demonstrates yet again that common questions do not predominate here. The unjust enrichment claim, Your Honor, I'll submit very quickly and then conclude. Unjust enrichment is an equitable claim. Go ahead. Continue. Fact-dependent. We ask the court to reverse the certification order and to remand the case for individual proceedings  Thank you, Your Honors. Thank you, counsel. We have an opportunity for rebuttal. Mr. Piper. Good morning, Your Honors. My name is Jonathan Piper. I'm here for the affilee, the Plaintiff Lebanon Chiropractic Clinic. I would please support counsel. This is a case challenging a practice of the defendants in the context of auto insurance of applying improper PPO discounts. The doctors said the discounts are improper for two reasons, and I'd like to emphasize that there are two reasons, because in addition to the channeling issue, we don't even get to channeling if we're right about our first point, which is farmers never had an agreement with the network. They never properly joined the CCM networks to take any discounts in the first place. We also have their admission that their policy was not to steer patients to the network providers. Our class consists of providers, doctors, clinics in one state, Illinois, dealing with one line of auto insurance and one PPO network, and we are dealing with form auto insurance policies and form provider agreements that the doctors have with the CCM network. And the basic issue in this case is quite simple, which really turns on four pages' worth of evidence. Literally, the question of whether they can take these discounts turns on four pages' worth of evidence. There is a three-page letter of agreement between their vendors, Zurich Services, and CCM, which is called a letter of intent. We say that is not a payor agreement. The provider signed a contract saying the only people that can take the discounts are payors that have a payor agreement. We say the three-page agreement to agree is not a payor agreement. It does not contain any essential terms. Resolving that issue means construing that three-page document. It's the same document for every one of the members of this class. There is no individualized issue about is this letter of intent a payor agreement. If we win that, then they never have the right to take these discounts. The second issue is one page, one interrogatory answer where they admit that their policy was not to steer patients to the network. Again, class-wide, they didn't steer patients to anybody. That was their policy, company-wide. So, again, based on that one admission, we have a simple issue. Does that comport with their obligations in this CCM network? There's no individual issue. Their admission applies to everybody. And we submit that if they went on both those issues, that they had a payor agreement and they didn't have to steer, that will resolve the whole case in their favor. If we went on both of those issues, they had no right to take these discounts. Then the only issue is what do they owe to the class members. Now, I would just point out a couple of points about all these PPO cases, in a way, are the same, and all of them are different. What makes this one a little different from Travelers is it's auto insurance. I'm not the lawyer on Travelers, but I believe that's a workers' compensation case. And here we have this admission as to their policy, and we have the issue about the three-page letter of intent. Let me go back here a minute. The defendant contends that you avoid whether they pay reasonable expenses of each class member and that your real grievance is with CCN, and that agreement is between the defendant or CNN's agreement is with the plaintiff. Am I correct? You're correct that that's what they are. There are several responses to that. The first is CCN isn't the one that withheld the money. Farmers is the one that took the discount. The second point is that if you look at the CCN provider agreement that Lebanon signed or any other class member, it says CCN is not liable for improper discounts. You've got to go sue the insurance company. So, in fact, CCN has got a pretty good defense point in the fingers, saying these are the people that need to be sued if they took improper discounts. So they are a proper defendant. There's a separate case against CCN's predecessor to change the way they do this contracting. That's on appeal as well. So the case turns on these two pieces of evidence. I'd emphasize again the standard of review is abuse of discretion, and also it's important to understand that there are procedural reasons why the court has to decide class certification before resolving merits issues. Is there a requirement for the insurance company, the defendant, to steer to your clients? Yes, and that's based on. And where does that come from? It's based on. What's the genesis of the contractual relationship or the contractual condition to steer? It's based on two things. It's based on the fact that the agreement sets up what's called a preferred or exclusive provider. What agreement are we talking about now? The only agreement that really exists in this case, which is the one between the provider and CCN, says this is a preferred provider organization. That the defendant is not a party to, right? Right. So that's the document that establishes the obligation for the defendant to steer. That is the document. There's also, here's another thing. We're not suing them based on the provider agreement. We're suing them on the auto policy, on the contract theory. So that's another difference between the cases. And they are basically saying, well, we can impose these discounts. So they're the ones that are invoking the contracts. They're saying we have a contractual right to take these discounts based on our agreement with CCN. And we're saying, well, wait a second, there is no CCN agreement. So, in other words, they're the one that actually is coming in claiming they have the right to take the discounts. But our position is that those discounts only are permitted if they are providing the steerage, and that's what a preferred provider organization is. That's what preferring the providers means. They're getting some advantage for being preferred providers. But that merits question. Make sure I understand. The defendant, the insurance company, is required to steer based upon the agreement that your client signed with CCN. And also based on what CCN told the payers it was. They said we're a preferred provider network. We're not a silent PPO. There's extrinsic evidence which shows that actually they had training materials to go out to these payers to tell them you can't be a silent PPO. You need to channel. That's very important. We have evidence of a meeting between CCN and Zurich and farmers to discuss channeling tools that could be used to steer the patients. And we have an email where a farmer says, since you're saying we have to steer patients to the network, we're dropping out of the network. So at a certain point, they finally, after the litigation, got going with the network because they did not want the steward job location. Now, their argument is basically that before you can get to any of these four pages of evidence, every member of the class needs to come in with their tax records and their financial records to prove that their fee schedule is reasonable. Well, that is not correct. First of all, we know that they paid less than the reasonable fee because they said they were getting savings. The explanation they said to the provider said, we're not challenging the reasonableness of your fees, but we're going to take these PPO savings, discounts. Well, automatically, you know what a discount is, what a saving is. That means they're paying less than they would have if they had to pay the full reasonable fee. Exactly what is the amount of the reasonable fee? That is a damages question. That's since they paid less than they're supposed to, how much should they have paid? And they aren't necessarily the same question. You know, I could pour a glass of water out of the pitcher. We know that there was less in the pitcher than there used to be. We wouldn't necessarily know exactly how much there was before. That would take some further investigation. We know they paid less than the reasonable amount when they took the discount. The damages question would be, well, what is the amount they should have paid? And that is another common fundamental question in this case and in all of these auto cases is when the policy says we will pay reasonable medical expenses or usual and customary medical expenses, what does that sentence in the contract mean? And it is very well settled that reasonable, usual, and customary, these are ambiguous phrases. There is no hat definition where everybody knows what reasonable means. The Illinois Supreme Court has ruled that way recently, and many courts have said that these are ambiguous. Did your clients think they were going to be able to bill less than what they normally do because of their anticipation of increased business? Well, that's exactly why they would agree to give these discounts for their usual and customary fee. So would that make their fee unreasonable then if they thought they were going to get more business? You mean a discount fee? Yes. Don't you have to look at it in context, I guess, is what my question is. Right, well, the usual and customary fee would be what the standard billing schedule is, what the standard fee schedule is. That would be the usual and customary reasonable fee. The discounted fee would be less than what's usual, customary, and reasonable, but if you agreed to give the discount, you agreed to give the discount. And it would therefore be reasonable. Well, it wouldn't even be a question of what's reasonable. It would be a question of what did you agree to accept. I mean, reasonable often arises and might arise. Let me get to why reasonable should mean the standard amount, though, because you have to take into account, and this, again, goes to why this case has got its own quirks. This is about auto no-fault medical payments. In other words, it's a special rider you buy that says, if I have to go to the hospital, there's going to be some money set aside and I just get paid. I don't have to prove whose fault the accident is. It's not going to cover all my medical expenses, but maybe there's $5,000 out there. That's no-fault medical payments insurance. And the courts in Illinois have said what the purpose of that is. It's to get the money to the patient quickly so that they don't have to worry about how am I going to pay the doctor. Other than the fact, pardon me, that it was a worker's comp insurance policy, are the issues similar? It's the same question I ask opposing counsel in COI versus travelers. Well, we also have this particular two issues that I mentioned. One, there's this issue about this three-page letter of intent between Zurich services and CCNF. I'm not talking about the fact, but generally are the legal issues similar? Right. Right. I mean, you know, the fact that it's autoworkers comp might make some variations, but it's essentially – it's a similar concept. In fact, I believe it's the same PPO network and the same provider. Well, what I was going to say is this no-fault policy is there to get the money fast to the insured. And in that context, their idea that before you can get the money, you need to get your doctor to produce his financial records and his income taxes and tell you what every other payor that he's gotten money from paid, that that's what you have to prove to get this fast pool of money that they set aside for no fault. There's something wrong with that. But obviously, the purpose of the no-fault is not to create some massive mini-trial every time an insured has an accident. It's just the opposite. So it's our view that in this context, there was the Van Vactor case that construed what necessary medical expenses are. It says – usually the policy says something like reasonable expenses for necessary medical treatment. And they said, well, given that this medical payments policy is to get the money there to cover the treatment, we're going to defer to the doctor. We're not going to have a lot of second-guessing of what is necessary medical treatment. Unless the insurance company wants to say this is fraud and deception and bad faith treatment, you should just pay for the treatment. And we think the same principle extends to the reasonable. That if the doctor is – if there's evidence that the doctor is billing charges that he doesn't normally bill, they can refer it to their fraud unit, they can challenge that. But basically, doctors are under some pressure in the market to charge reasonable fees. What they normally charge is a reasonable rate. And it would serve the purpose of this policy of getting the money to the customers if the insurance companies have the burden. If they want to challenge what the doctor is billing, it's their burden. It's not the doctor's burden to come in with all his financial records and so forth. So our view is you don't even need these many trials. The most reasonable construction of the policy would be that the doctor just needs to show that he charged his usual fee. And that would dispense with that whole issue. There's another way to dispense with it, though, which is they have a chance to challenge the reasonableness of these fees. We reproduced – page 3 of our brief shows the form that they send out to the doctor when they challenge their fees. It has the amount that was actually charged. It has a column for challenging the reasonableness of the fees. And then it has another column for PPO savings. And there's a code that the computer uses called RC40, which is that the charge is more than would appear reasonable when compared to other providers in the same geographic area. So they have a computer system for challenging reasonableness. What the evidence shows is they have a policy that they will not challenge reasonableness when they're taking the discounts. So our view is they have waived any right to challenge the reasonableness of the doctor's normal charges. And even if the policy would allow them to do that, they chose not to do that here. They went for the PPO saving instead. And, again, this idea that they get – first they take the discount. And if you challenge that, they say, okay, well, we're going to challenge the reasonableness of your fee. They don't get to keep coming up with new bites of the apple when we're talking about medical payments, no-fault insurance. Now, just to clean up some of these issues about consumer fraud assignment and so forth, first of all, it's established in Illinois that a medical provider can sue under the Illinois Consumer Fraud Act for money payment issues because in this case it affects two consumer relationships. It affects the patient as a consumer of the doctor's services. It also here affects the patient as a consumer of the auto insurance policy. And the doctor has standing to challenge something that's deceptive or unfair that the insurance company is doing because the patient is a consumer. Now, the issue of proximate causation has been very prominent in a bunch of deceptive advertising cases like the DeVos failure, Shannon, Olivera. I want to emphasize this is not a deceptive advertising case. Here it's not that they lured a doctor into – that they promised him up front we will give you steerage before the patient went in. It's not like they have an ID card that these patients have that say I'm a member of the CCN network. In fact, farmers, that's part of their no-steerage policy. They didn't do anything. The only time that they raised CCN was when they took the discount. So the damage and the deceptive communication are one and the same piece of paper. They send out this piece of paper saying we are taking a PPO discount and docking your fee. And they're withholding the money that's due at the same time that they're sending out the misleading communication, which claims that they're a member of the CCN network. So the proximate causation is self-evident. There is no intervening cause between the communication and the financial injury. They're one and the same act, essentially. It's withholding money under false pretenses as opposed to luring you into paying. Is your client still a member of the CCN network? The doctor is a member of the network, but they are not a member of the network in the sense that they're not a payer. They never signed up properly for the CCN network. That's the whole thing about the three-page letter of intent. It's not enough to get them the right to take these discounts. Who didn't sign up? Farmers. No, no, I mean your clients. Are they still members of the network? I'm not 100% sure of the answer to that. They may be. They may not be. I'm not sure. Respond to this, please, sir. The defendant contends that you failed to explain how you can prove with common evidence on a class-wide basis that it and every member were deceived. Do you think you have to do that? Well, they were deceived in that the money was withheld. That's all that we need to do. Every member. Everybody had the discount taken. That's by definition in the class definition. I would also add that we have alternately framed consumer fraud as an unjust, unfair practice which does not even require deception, and maybe that's a better rubric since this is not a deceptive advertising case. Now, one issue. Well, unless you have any other questions, I'll rest, but I thank you for your time, and I hope you'll uphold the judge's exercise. Thank you, Counsel Rebuttal. Your Honors. Your Honor, Lebanon invites the court to contradict several Illinois precedents, to disregard the weight of authority, and to err by affirming the decision below. I'd ask the court to consider the Avery case closely. In Avery, the policy promise was fact specific, to return vehicles to their pre-loss condition. The policy promise here is fact specific. What is reasonable? What is usual and customary? The Illinois Supreme Court in Avery said you can't answer the question of what a car's condition was prior to the loss and what the car's condition was after the loss without a fact-intensive inquiry, and because a fact-intensive inquiry was needed, there was no predominance, there was no commonality. A class action is not superior. The same is true here, I submit, Your Honors. Reasonableness is a fact-intensive inquiry. To determine the reasonableness of Lebanon's charges requires an examination of individual evidence. It requires a comparison of Lebanon's charges to usual and customary charges in the community. And the decision there is individual, just like the decision in Avery is individual. In Avery, class certification was reversed. Here, class certification should be reversed. I'd like to mention a bit of obscurity. Your Honors had inquired of me on that subject, and it was interesting what counsel said. You'll recall in the discussion of channeling two points, and I want to emphasize them both. One, the channeling obligation comes from a contract to which Mid-Century is not a partner, the provider agreement between Lebanon and CCM. Second, counsel emphasized to the court what CCM told providers. I believe that was a quote. It told them about channeling. It told them it was a PPO where it was required. It told them that channeling was very important. It told providers that it wasn't a silent PPO. Providers expected an increase. Each and every one of the facts I just mentioned, assume for a moment they're true, they're all individual. Every one of those facts is individual. Channeling and steering isn't decided by the three-page documents which Mid-Century is not a partner. It's not decided by it alone. To the extent any obligation exists, it's decided just by what counsel told you. All those facts, all of which are individual. Now, let's be clear, too, on another point if I could, Your Honors. The claim is that the court need to interpret reasonable and usual and customary so that it pays essentially every doctor's charge. If the doctor has a clear conscience, the insurer has to pay. First of all, that isn't what the policy says. In plain English, it isn't what the policy says. Second, counsel refers to the Van Vactor case and said, Look, the courts have already looked at this question. There's a real difference between the Van Vactor case and this case. A real difference. The insurance policy of Van Vactor said the provider had the sole discretion to determine the reasonableness to determine their fee. The provider had sole discretion. That's not our case. It's the opposite of our case. This is a case about usual and customary, reasonable medical expenses. In all the cases I mentioned to the court before, Victory Memorial, Magic, Sherman Hospital, Dreyer Medical Clinic, those are all looking at usual and customary. Our statutes use the words usual and customary. And I'm going to read to the court from the Illinois Insurance Facts, a publication by the Illinois Department of Insurance, which we cite in our legal memorandum. Usual and customary fee is defined as the charge for health care that is consistent with the average rate or charge. For identical or similar services in a certain geographical area. It's never met what the plaintiff says. It doesn't mean it here. And you can't affirm, and I urge the court not to affirm, on a ground that's so inconsistent with subject law and precedent in our state. The plaintiff speaks to the ICPA claim, and you'll recall a reference to the misleading communication and the payment. Well, the misleading communication is the explanation of review. It is a letter set, which explains what has happened, explains the charge. Here, Dr. Fisher never saw it, never read it. He was their corporate representative. I don't know what the facts and circumstances are for every other member of the class wrongly certified below, but I do know, again, those circumstances will be individual. We ask the court to reverse. We thank the court for hearing us this morning. Thank you, counsel, for your briefs and arguments. The court will take the matter under advisement and render its decision in due course. We will stand in short recess.